IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF OKLAHOMA

CLETUS W. GIBBS, )
 )
 Plaintiff, )
 )
v. ) Case No. CIV-17-386-KEW
 )
COMMISSIONER OF THE SOCIAL )
SECURITY ADMINISTRATION, )
 )
 Defendant. )

**OPINION AND ORDER**

Plaintiff Cletus W. Gibbs (the "Claimant") requests judicial review of the decision of the Commissioner of the Social Security Administration (the "Commissioner") denying Claimant's application for disability benefits under the Social Security Act. Claimant appeals the decision of the Administrative Law Judge ("ALJ") and asserts that the Commissioner erred because the ALJ incorrectly determined that Claimant was not disabled. For the reasons discussed below, it is the finding of this Court that the Commissioner's decision should be and is REVERSED and the case REMANDED to Defendant for further proceedings.

**Social Security Law and Standard of Review**

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment. . ." 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social

Security Act "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. . ." 42 U.S.C. §423(d)(2)(A). Social Security regulations implement a five-step sequential process to evaluate a disability claim. *See*, 20 C.F.R. §§ 404.1520, 416.920.[1]

Judicial review of the Commissioner's determination is limited in scope by 42 U.S.C. § 405(g). This Court's review is limited to two inquiries: first, whether the decision was supported by substantial evidence; and, second, whether the correct legal

---

[1] Step one requires the claimant to establish that he is not engaged in substantial gainful activity, as defined by 20 C.F.R. §§ 404.1510, 416.910. Step two requires that the claimant establish that he has a medically severe impairment or combination of impairments that significantly limit his ability to do basic work activities. 20 C.F.R. §§ 404.1521, 416.921. If the claimant is engaged in substantial gainful activity (step one) or if the claimant's impairment is not medically severe (step two), disability benefits are denied. At step three, the claimant's impairment is compared with certain impairments listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1. A claimant suffering from a listed impairment or impairments "medically equivalent" to a listed impairment is determined to be disabled without further inquiry. If not, the evaluation proceeds to step four, where claimant must establish that he does not retain the residual functional capacity ("RFC") to perform his past relevant work. If the claimant's step four burden is met, the burden shifts to the Commissioner to establish at step five that work exists in significant numbers in the national economy which the claimant – taking into account his age, education, work experience, and RFC – can perform. Disability benefits are denied if the Commissioner shows that the impairment which precluded the performance of past relevant work does not preclude alternative work. *See generally,* Williams v. Bowen, 844 F.2d 748, 750-51 (10th Cir. 1988).

standards were applied. <u>Hawkins v. Chater</u>, 113 F.3d 1162, 1164 (10th Cir. 1997)(citation omitted). The term "substantial evidence" has been interpreted by the United States Supreme Court to require "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." <u>Richardson v. Perales</u>, 402 U.S. 389, 401 (1971) (quoting <u>Consolidated Edison Co. v. NLRB</u>, 305 U.S. 197, 229 (1938)). The court may not re-weigh the evidence nor substitute its discretion for that of the agency. <u>Casias v. Secretary of Health & Human Servs.</u>, 933 F.2d 799, 800 (10th Cir. 1991). Nevertheless, the court must review the record as a whole, and the "substantiality of the evidence must take into account whatever in the record fairly detracts from its weight." <u>Universal Camera Corp. v. NLRB</u>, 340 U.S. 474, 488 (1951); *see also*, <u>Casias</u>, 933 F.2d at 800-01.

### Claimant's Background

Claimant was 52 years old at the time of the ALJ's latest decision. Claimant obtained his GED. Claimant has worked in the past as a janitor supervisor, transport driver, and warehouse worker. Claimant alleges an inability to work beginning September 9, 2009 due to limitations resulting from mental impairments, including depression, anxiety, and anger issues, back problems, and numbness in the hands and feet.

**Procedural History**

On January 26, 2011, Claimant protectively filed for protectively filed for supplemental security income pursuant to Title XVI (42 U.S.C. § 1381, *et seq.*) of the Social Security Act. Claimant's application was denied initially and upon reconsideration. On January 9, 2013, Administrative Law Judge ("ALJ") Luke Liter conducted an administrative hearing in Tulsa, Oklahoma. On February 1, 2013, the ALJ entered an unfavorable decision. The Appeals Council denied review on May 15, 2014. Claimant appealed and the decision was reversed by this Court and remanded for further proceedings.

While the appeal was pending, Claimant filed a second application for benefits on May 27, 2014. Claimant was determined by the agency to be disabled beginning April 1, 2014. Therefore, the remand, and consequently this appeal, only considered whether Claimant was disabled for the closed period from September 9, 2009 through March 31, 2014.

The ALJ conducted a further administrative hearing on April 19, 2016 in Tulsa, Oklahoma. On May 31, 2016, the ALJ entered an unfavorable decision as to the closed period. The Appeals Council denied review on February 14, 2017. As a result, the decision of the ALJ represents the Commissioner's final decision for purposes

of further appeal. 20 C.F.R. §§ 404.981, 416.1481.

**Decision of the Administrative Law Judge**

The ALJ made his decision at step four and step five of the sequential evaluation. He determined that while Claimant suffered from severe impairments, he did not meet a listing and retained the residual functional capacity ("RFC") to perform his past relevant work from September 9, 2009 through November 13, 2012 and could perform the representative jobs from November 13, 2012 through March 31, 2014.

**Errors Alleged for Review**

Claimant asserts the ALJ committed error in (1) failing to comply with the prior remand Order instructing the ALJ to properly assess the RFC, particularly with respect to mental impairments; (2) failing to comply with the remand Order regarding Claimant's GAF scores; (3) failing to properly assess Claimant's credibility and consistency; and (4) finding Claimant could perform his past relevant work for part of the relevant period.

**RFC Determination**

In his decision, the ALJ found Claimant suffered from the severe impairments of obesity, back impairments, hypertension, and depression. (Tr. 628). The ALJ determined a bifurcated RFC. For the period from September 9, 2009 through November 13, 2012, he

5

found Claimant could perform less than a full range of medium work. The ALJ determined Claimant could lift/carry, push/pull 50 pounds occasionally and 25 pounds frequently, could sit for six hours out of an eight hour workday, could stand/walk a combined total of six hours out of an eight hour workday, was able to understand and carry out simple and some complex work tasks, was able to maintain concentration, persistence, and pace for a normal workday and workweek, was able to recognize and avoid common work hazards, was able to adapt to changes in the work setting and make decisions regarding work tasks, was able to work with co-workers and supervisors on a superficial basis, and was not able to work with the general public. (Tr. 631).

For the period from November 14, 2012 through March 31, 2014, the ALJ found Claimant could perform less than a full range of sedentary work. In so doing, he determined Claimant could lift/carry, push/pull ten pounds occasionally and less than ten pounds frequently, could sit for six hours out of an eight hour workday, could stand or walk for a combined total of two hours in an eight hour workday, could occasionally push/pull, could occasionally climb ramps or stairs, but should avoid climbing ladders, ropes, or scaffolds, could occasionally balance, kneel, stoop, crouch, and crawl, was able to understand and carry out simple and some complex work tasks, was able to maintain

6

concentration, persistence, and pace for a normal workday and workweek, was able to recognize and avoid common work hazards, was able to adapt to changes in the work setting and make decisions regarding work tasks, was able to work with co-workers and supervisors on a superficial basis, and was not able to work with the general public. (Tr. 631).

After consultation with a vocational expert, the ALJ determined Claimant could perform his past relevant work as a warehouse worker from September 9, 2009 through November 13, 2012 but not after that date. (Tr. 636-37). From November 14, 2012 through March 31, 2014, the ALJ found Claimant could perform the representative jobs of machine feeder, bench hand, and polisher, all of which the ALJ found existed in sufficient numbers in the national economy. (Tr. 638). As a result, the ALJ concluded that Claimant was not under a disability at any time from January 26, 2011, the date the application was filed, through March 31, 2014, the date he was later determined to be disabled. Id.

Claimant contends the ALJ failed to properly evaluate the report of Dr. Ronald Schatzman, who acted as a consultative examining physician in this case. Dr. Schatzman examined Claimant on June 11, 2011. Among his findings was a notation that Claimant "had somewhat of a strange affect. His history was difficult to follow and only about 50% intelligible." (Tr. 345). Acting upon

7

a request by the state agency for clarification of the comment, Dr. Schatzman responded by circling on the form, Claimant was "only 50% intelligible because of perceived mental problems, such as rambling, tangential and/or difficulties concentrating and thinking." (Tr. 352).

The ALJ appears to have been unaware of Dr. Schatzman's clarification of his comments regarding Claimant's mental health. The ALJ recites the notation about Claimant being unintelligible but then purports to not know what Dr. Schatzman meant by the comment and declined to speculate whether it was a peculiar manner of speech, "some kind of confabulation or incoherence, or whether it reflected culturally or socially induced communicative style that was confusing to the examiner. There is no indication that Dr. Schatzman associated this with any sign or symptom of 'mental illness'." (Tr. 633). Dr. Schatzman's subsequent clarification to the state agency makes clear that he believed the difficulty in understanding Claimant was attributed to mental illness.

The ALJ ultimately gave Dr. Schatzman's report "no weight to any interpretation of [his] report as being indicative of a significant mental impairment based on the reported lack of intelligibility of fifty percent of the claimant's speech." He also noted that Dr. Schatzman was not a psychologist or psychiatrist. (Tr. 633). However, Dr. Schatzman makes clear that he intended the

8

comment to be a reflection of Claimant's mental problems. It is also unclear whether the consulting psychologists, who the ALJ notes were aware of Dr. Schatzman's report, were also aware of his subsequent opinion on Claimant's mental status.

The ALJ is required to consider all medical opinions, whether they come from a treating physician or non-treating source. Doyle v. Barnhart, 331 F.3d 758, 764 (10th Cir. 2003); 20 C.F.R. § 416.927(c). He must provide specific, legitimate reasons for rejecting any such opinions. The ALJ must also give consideration to several factors in weighing any medical opinion. Id.; 20 C.F.R. § 416.927(d)(1)-(6). Moreover, an ALJ "is not entitled to pick and choose through an uncontradicted medical opinion, taking only the parts that are favorable to a finding of nondisability." Haga v. Astrue, 482 F.3d 1205, 1208 (10th Cir. 2007). The ALJ's rejection of Dr. Schatzman's opinion on Claimant's mental status was based on half-information and speculation. He must re-evaluate the opinion in light of the subsequent clarification. Should he need to recontact Dr. Schatzman or any other mental health professional to ascertain Claimant's true mental status, he should do so on remand.

Claimant also objects to the physical assessment by Dr. Schatzman as being internally inconsistent. Claimant notes that his leg measurements are reported differently in two separate portions

9

of the report. (Tr. 346, 349). Claimant argues that this shows muscle atrophy but offers no other corroborating medical evidence of this diagnosis. Moreover, no other medical report indicates atrophy.

**GAF Scores**

Claimant also contends the ALJ minimized his low GAF scores, in contravention to the directive from this Court. "The GAF is a subjective determination based on a scale of 100 to 1 of the clinician's judgment of the individual's overall level of functioning." Langley v. Barnhart, 373 F.3d 1116, 1122 n. 3 (10th Cir. 2004). The Tenth Circuit through a series of unpublished decisions has made it clear that the failure to discuss a GAF alone is insufficient to reverse an ALJ's determination of non-disability. *See*, Lee v. Barnhart, 2004 WL 2810224, 3 (10th Cir. (Okla.)); Eden v. Barnhart, 2004 WL 2051382, 2 (10th Cir. (Okla.)); Lopez v. Barnhart, 2003 WL 22351956, 2 (10th Cir. (N.M.)). The foundation for this statement is the possibility that the resulting impairment may only relate to the claimant's social rather than occupational sphere. Lee, *supra* at 3. However, a GAF of 50 or less does suggest an inability to keep a job. Id. citing Oslin v. Barnhart, 2003 WL 21666675, 3 (10th Cir. (Okla.)). Specifically, the DSM-IV-TR, explains that a GAF 41 and 50 indicates "[s]erious

10

symptoms (e.g., suicidal ideation, severe obsessional rituals, frequent shoplifting) OR any serious impairment in social, occupational, or school functioning (e.g., no friends, inability to keep a job)." Diagnostic and Statistical Manual of Mental Disorders 34 (4th ed. 2000).

An ALJ is required to consider all relevant evidence in the record. Soc. Sec. R. 06-03p. He is not, however, required to discuss every piece of evidence in the record. Clifton v. Chater, 79 F.3d 1007, 1009-10 (10th Cir. 1996). A GAF score may be of considerable help to the ALJ in formulating the RFC but it is not essential to the RFC's accuracy and "taken alone does not establish an impairment serious enough to preclude an ability to work." Holcomb v. Astrue, 2010 WL 2881530, 2 (Okla.)(unpublished opinion) citing Howard v. Comm. of Soc. Sec., 276 F.3d 235, 241 (6th Cir. 2002). The ALJ analyzed the GAF scores as indicative of Claimant's larger mental health issues. As a piece of evidence among other evidence, the GAF scores may be useful. However, the ALJ is not under an obligation to consider them determinative or superior to other evidence. The ALJ's analysis of Claimant's GAF scores was thorough and appropriate.

**Credibility Determination**

Claimant challenges the ALJ's discounting of his credibility on activities of daily living. Claimant states that the ALJ's notation that he worked part time as a custodian/maintenance worker for a church ignored that it was not full time work. The ALJ acknowledged such in the decision. (Tr. 629). He also objected to the ALJ's failure to acknowledge the notations in the medical reports that Claimant was believed and not a malingerer.

It is well-established that "findings as to credibility should be closely and affirmatively linked to substantial evidence and not just a conclusion in the guise of findings." Kepler v. Chater, 68 F.3d 387, 391 (10th Cir. 1995). "Credibility determinations are peculiarly in the province of the finder of fact" and, as such, will not be disturbed when supported by substantial evidence. Id. Factors to be considered in assessing a claimant's credibility include (1) the individual's daily activities; (2) the location, duration, frequency, and intensity of the individual's pain or other symptoms; (3) factors that precipitate and aggravate the symptoms; (4) the type, dosage, effectiveness, and side effects of any medication the individual takes or has taken to alleviate pain or other symptoms; (5) treatment, other than medication, the individual receives or has received for relief of pain or other symptoms; (6) any measures other than treatment the individual uses

or has used to relieve pain or other symptoms (e.g., lying flat on his or her back, standing for 15 to 20 minutes every hour, or sleeping on a board); and (7) any other factors concerning the individual's functional limitations and restrictions due to pain or other symptoms. Soc. Sec. R. 96-7p; 1996 WL 374186, 3.

The ALJ relied upon appropriate factors in evaluating the credibility of Claimant's statements. The nature of Claimant's treatment, the objective medical testing, and the inconsistencies between the claimed restrictions and Claimant's activities all form specific and legitimate reasons for the ALJ's questioning of Claimant's credibility.

**Step Four Analysis**

Claimant also contends the ALJ did not perform a proper analysis at step four. In analyzing Claimant's ability to engage in his past work, the ALJ must assess three phases. In the first phase, the ALJ must first determine the claimant's RFC. Winfrey v. Chater, 92 F.3d 1017, 1023 (10th Cir. 1996). Since the Court is requiring a re-evaluation of the opinion of Dr. Schatzman, the RFC may require further evaluation.

In the second phase, the ALJ must determine the demands of the claimant's past relevant work. Id. In making this determination, the ALJ may rely upon the testimony of the vocational expert.

Doyal v. Barnhart, 331 F.3d 758, 761 (10th Cir. 2003). The ALJ in this case inquired of the vocational expert as to the demands of Claimant's past relevant work. (Tr. 665-66). The expert testified the warehouse worker position constituted medium, unskilled work with an SVP of 2. (Tr. 665). The ALJ fulfilled his duty in the second phase.

The third and final phase requires an analysis as to whether the claimant has the ability to meet the job demands found in phase two despite the limitations found in phase one. Winfrey, 92 F.3d at 1023. Again, since the RFC is subject to revision, the analysis at that third phase may be modified.

## Conclusion

The decision of the Commissioner is not supported by substantial evidence and the correct legal standards were not applied. Therefore, this Court finds, in accordance with the fourth sentence of 42 U.S.C. § 405(g), the ruling of the Commissioner of Social Security Administration should be and is **REVERSED** and the case is **REMANDED** to Defendant for further proceedings consistent with this Opinion and Order.

IT IS SO ORDERED this 20th day of March, 2019.

_____
KIMBERLY E. WEST
UNITED STATES MAGISTRATE JUDGE